UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| BRADLEY SMITH, <br><br>　　　　　　　　　　　　Plaintiff, <br>v. <br><br>UNITED STATES OF AMERICA, <br><br>　　　　　　　　　　　　Defendant. | Case No. 2:13-cv-01936-JCM-PAL <br><br>**ORDER AND REPORT OF FINDINGS AND RECOMMENDATION** <br><br>(IFP App – Dkt. #1) |

Plaintiff Bradley Smith is proceeding in this action pro se, has requested authority pursuant to 28 U.S.C. § 1915 to proceed in forma pauperis, and submitted a complaint. This proceeding was referred to this court by 28 U.S.C. § 636(b)(1)(B) Local Rules IB 1-3 and 1-4.

**I.   In Forma Pauperis Application.**

Plaintiff has submitted the affidavit required by § 1915(a) showing an inability to prepay fees and costs or give security for them. Accordingly, the request to proceed in forma pauperis will be granted pursuant to 28 U.S.C. § 1915(a). The court will now review Plaintiff's complaint.

**II.   Screening the Complaint.**

Upon granting a request to proceed in forma pauperis, a court must additionally screen a complaint pursuant to § 1915(a). Federal courts are given the authority to dismiss a case if the action is legally "frivolous or malicious," fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2). When a court dismisses a complaint under § 1915(a), the plaintiff should be given leave to amend the complaint with directions to cure its deficiencies, unless it is clear from the face of the complaint that the deficiencies could not be cured by amendment. *See Cato v. United States.* 70 F.3d 1103, 1106 (9th Cir. 1995).

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal of a complaint for failure to state a claim upon which relief can be granted.  Review under Rule 12(b)(6) is essentially a ruling on a question of law.  *See Chappel v. Laboratory Corp. of America,* 232 F.3d 719, 723 (9th Cir. 2000).  A properly pled complaint must provide a short and plain statement of the claim showing that the pleader is entitled to relief.  Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombley,* 550 U.S. 544, 555 (2007).  Although Rule 8 does not require detailed factual allegations, it demands more than labels and conclusions or a "formulaic recitation of the elements of a cause of action."  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Papasan v. Allain,* 478 U.S. 265, 286 (1986)).  The court must accept as true all well-pled factual allegations contained in the complaint, but the same requirement does not apply to legal conclusions.  *Iqbal,* 556 U.S. at 679.  Mere recitals of the elements of a cause of action, supported only by conclusory allegations, do not suffice.  *Id.* at 678.  Secondly, where the claims in the complaint have not crossed the line from plausible to conceivable, the complaint should be dismissed.  *Twombly,* 550 U.S. at 570.

Smith's complaint attempts to state a claim under the Federal Tort Claims Act, 28 U.S.C. § 1346, for "employment negligence" against Smith's former employer, the Department of Veterans Affairs Southern Nevada Healthcare System (the "VA").  He seeks monetary damages on his tort claims and injunctive relief to remedy personnel actions.  He claims his civil rights and employment rights were violated by various personnel actions taken against him and because the VA failed to take appropriate remedial or corrective action against his direct supervisors and others who subjected him to intolerable working conditions.  He asserts the harassment and intolerable working conditions are related to a separate whistleblowing complaint that is pending before the Merit System Protection Board.

The complaint, which is fifty pages long including exhibits, alleges that Smith was forced to resign from the VA on April 29, 2013, because the VA refused to "separate Steve Stern and Ralph Breese from their Positions of Authority over the Plaintiff despite there being a preponderance of evidence of ongoing severe Harassment and Abuses of the Plaintiff by these Federal Managers."  Complaint at ¶ 13.  Smith contends that he was subject to unspecified, on-

going harassment. He does not provide any factual allegations about his supervisors' conduct. He asserts that after he complained about his supervisors' conduct, he was suspended for one week.

Smith also alleges the VA police fabricated evidence against him and conspired with management to violate his civil rights and cover up that violation after the fact. Smith alleges that the law enforcement officers at the VA engaged in "False Imprisonment, Conspiracy, Fabrication of Evidence, Mischaracterization and Misrepresentation of Facts, False Light/Defamation, Obstruction of Justice, FOIA Violation(s), and Negligent and Intentional Infliction of Emotional Distress." Complaint at ¶ 4.2. He contends that the VA police officers falsified a police report that Plaintiff was under the influence of drugs at work. Smith alleges that as a result of the false report and the VA police's conspiracy with management, Smith was forced to resign and/or constructively discharged from his employment with the VA on April 29, 2013.

In addition to this case and Smith's whistleblower action that is under consideration at the administrative level, Smith has also filed three additional lawsuits in this court that appear to be related to this case. In the first, pending as *Smith v. Shinseki*, 2:12-cv-02141-APG-VCF, Smith alleges Title VII retaliation claims against individual Defendants employed by the VA. In the second, pending as *Smith v. Lopez,* 2:13-cv-00892-GMN-PAL, Smith alleges his former VA supervisors violated his constitutional rights. In the third, pending as *Smith v. United States,* 2:13-cv-00039-JAD-GWF, Smith alleges an FTCA claim for negligence related to a suicide attempt he alleges was caused by the VA's negligence. The complaint in the instant case makes clear that this case is focused on "just the Causes of Action in this Complaint[,] which pertain to Employer's Negligence in terms of Employment Negligence Torts and Consequential Constructive Discharge."

**A. The Federal Tort Claims Act.**

As a general matter, the United States is immune from suit and can be sued only to the extent that it has waived its immunity. *See United States v. Orleans*, 425 U.S. 807, 814 (1976). The FTCA waives the United States' sovereign immunity for certain tort claims arising out of

1  the negligence of federal employees and agencies where a claim would exist under state law if
2  the United States were a private party.  *See* 28 U.S.C. § 1346(b); *Green v. United States,* 630 F.3d
3  1245, 1249 (9th Cir. 2011).  The FTCA's waiver of sovereign immunity is limited by a number
4  of statutory exceptions, and if a claim falls within such an exception, the federal courts do not
5  have jurisdiction to hear it.  *See Nurse v. United States,* 226 F.3d 996, 1000 (9th Cir. 2000).  In
6  addition, prior to filing an FTCA suit, a plaintiff must first present the claim to the appropriate
7  federal agency, and the claim must have been finally denied by the agency.  *See* 28 U.S.C.
8  §§ 2672, 2675(a).  Here, Plaintiff alleges he has exhausted his administrative remedies, and this
9  allegation is sufficient for purposes of this Screening Order.  *See* Complaint at ¶ 3.

### B. The Civil Service Reform Act.

11  Congress enacted the CSRA to replace the old civil service system, "an outdated
12  patchwork of statutes and rules built up over almost a century."  *Saul v. United States,* 928 F.2d
13  829, 833 (9th Cir. 1991) (citing S.Rep. No. 969, 95th Cong., 2d Sess. 3, 53 (1978), *reprinted in*
14  1978 U.S.C.C.A.N. 2723, 2725 (Senate Report)).  The "heavily criticized" pre-existing system
15  involved "haphazard arrangements for administrative and judicial review of personnel action"
16  depending on an employee's classification and the type of personnel decision.  *Mangano v.*
17  *United States,* 529 F.3d 1243, 1246 (9th Cir. 2008).  By enacting the CSRA, Congress created
18  "an integrated scheme of administrative and judicial review, designed to balance the legitimate
19  interests of the various categories of federal employees with the needs of sound and efficient
20  administration."  *Id.* (citing *United States v. Fausto,* 484 U.S. 439, 445 (1988)).

21  The CSRA creates a remedial scheme by which a federal employee can challenge a
22  supervisor's "prohibited personnel practice."  *Id.* (citing *Orsay v. United States Dep't of Justice,*
23  289 F.3d 1125, 1128 (9th Cir. 2002) (citing 5 U.S.C. § 2302))).  If the challenged conduct falls
24  within the scope of the CSRA's "prohibited personnel practices," the CSRA's administrative
25  procedures are the employee's only remedy.  *Id.*  The CSRA's remedial scheme is "both
26  exclusive and preemptive" because permitting FTCA claims to supplant the CSRA's remedial
27  scheme would defeat Congress' purpose of creating "a single system of procedures and remedies
28  subject to judicial review."  *Id.* (citing *Rivera v. United States,* 924 F.2d 948, 951 (9th Cir.

4

1991)). Thus, where Congress has provided a way to process prohibited personnel practices, other potential remedies are preempted. *Id.* (citing *Fausto,* 484 U.S. at 455). In fact, a federal employee's personnel-related complaints are preempted "even if no remedy is available under the CSRA." *Id.* (citing, among others, *Collins v. Bender,* 195 F.3d 1076, 1079 (9th Cir. 1999)).

The CSRA precludes Smith's FTCA claims in this case if the conduct underlying his complaint can be challenged as "prohibited personnel practices" within the meaning of the CSRA. *See Saul,* 928 F.2d at 841. "Personnel action" is broadly defined to include any appointment, promotion, disciplinary or corrective action, detail, transfer, or reassignment, reinstatement, restoration, reemployment, performance evaluation, decision concerning pay or benefits, mandatory psychiatric evaluation, or any other significant change in duties, responsibilities, or working conditions. *See* 5 U.S.C. § 2302(a)(2)(A)(i)-(xi); *Brock v. United States,* 64 F.3d 1421, 1424-25 (9th Cir. 1995) (holding CSRA does not preempt federal claims involving conduct that does not fall within one of the CSRA's eleven categories of "personnel action"). There are limits as to what qualifies as personnel action, but those examples are "well outside anything that could reasonably be described as personnel action." *Mangano*, 529 F.3d at 1247. For example, in *Orsay,* the Ninth Circuit held that aiming a loaded weapon in the workplace at another employee was not a personnel action. 289 F.3d at 1129. Likewise, in *Brock*, the Ninth Circuit held that claims of rape or sexual assault were also not personnel actions preempted by the CSRA. 64 F.3d at 1424-25.

In *Mangano,* the Ninth Circuit instructed how courts should conduct a CSRA preemption analysis. There, the plaintiff alleged that his supervisor filed retaliatory complaints against him after the plaintiff had filed a complaint. 529 F.3d at 1245. The plaintiff also alleged his supervisor inappropriately criticized plaintiff's handling of a patient and provided false testimony against the plaintiff. *Id.* The plaintiff in *Mangano* claimed that this conduct led to his termination, and he filed suit under the FTCA. The Ninth Circuit concluded that the conduct at issue was a "prohibited personnel action." Plaintiff could have sought redress within the CSRA's framework, and his claim was preempted.

1    Likewise, here, the court finds Smith's claims are precluded by the CSRA. All of
2    Smith's claims are based on allegations that his working conditions were intolerable, and he was
3    constructively discharged. He contends the VA allowed his supervisors to remain in their
4    positions despite their alleged harassment of Smith. In other words, Smith claims the VA should
5    have implemented some corrective or disciplinary measure to ensure Smith would not continue
6    to be subjected to his supervisors' harassing conduct. The implementation of corrective or
7    disciplinary action is a "personnel practice" as defined by the CSRA. In addition, constructive
8    discharge is a "personnel action" covered by the CSRA. *See* 5 U.S.C. § 2302(2)(A)(iii), (ix), (xi)
9    ("personnel action" includes "disciplinary or corrective action," "a decision concerning pay,
10   benefits, or awards," or "any significant change in duties, responsibilities, or working
11   conditions").

12   Having concluded the conduct was "personnel action," the next question is whether the
13   personnel action was committed in violation of the CSRA's twelve enumerated practices.
14   "Prohibited personnel practices" are defined as any "personnel action" taken by someone in
15   authority that violates one or more of twelve enumerated practices. *Id.* at 1427 (citing 5 U.S.C.
16   § 2302(b)). Two of the twelve enumerated practices are relevant here. Section 2302(b)(8)(A)
17   states that a supervisor may not fail to take "personnel action" with respect to any employee
18   because of the employee's disclosure of information which the employee or applicant reasonably
19   believes is a violation of any law, rule, or regulation. Section 2302(b)(12) provides that a
20   supervisor may not fail to take action which directly concerns the "merit system principles
21   contained in section 2301 of this title."[1]

---

[1] Section 2301 provides that "[f]ederal personnel management should be implemented" consistent with a number of principles which include, *inter alia,* the following:
> All employees ... shall receive fair and equitable treatment in all aspects of personnel management....
> All employees should maintain high standards of integrity, conduct, and concern for the public interest....
> Employees should be retained on the basis of the adequacy of their performance, inadequate performance should be corrected, and employees should be separated who cannot or will not improve their performance to meet required standards.

5 U.S.C. § 2301(b).

The CSRA prohibits a failure to take personnel action—here, disciplinary or corrective action—with respect to an employee's disclosure of information which the employee reasonably believes to be in violation of a law, rule, or regulation or evidences gross mismanagement or an abuse of authority.  *See* 5 U.S.C. § 2302(b)(8)(A).  Here, Smith alleges the VA failed to take disciplinary or corrective action once it was aware Smith's supervisors were harassing him.  He asserts the VA allowed his supervisors to continue in a position of authority over him despite their alleged harassing behavior.  In other words, the VA should have implemented some corrective or disciplinary measure to ensure Smith was not subjected to conduct of his supervisors which violated appropriate personnel practices.

The CSRA also prohibits a failure to take personnel action relating to "the merit system principles contained in section 2301 of this title." 5 U.S.C. § 2302(b)(12). The merit system provides that personnel management should be enforced to provide "fair and equitable treatment," with "high standards of integrity, conduct, and concern for the public interest," and should retain employees "on the basis of the adequacy of their performance."  5 U.S.C. § 2301(b)(2), (4), (6). The merit system explicitly states "inadequate performance should be corrected, and employees should be separated who cannot or will not improve their performance to meet required standards." 5 U.S.C. § 2301(b)(6).  The VA's alleged failure to take corrective action with respect to Plaintiff's supervisors' conduct, if true, would plainly violate this merit system. By failing to act, the VA did not ensure Smith received fair and equitable treatment, correct inadequate performance, or separate employees as required by the CSRA. In addition, the VA's alleged inaction, if true, certainly failed to satisfy the "high standards of integrity, conduct, and concern for the public interest" which resulted in Smith receiving much less than "fair and equitable treatment" when he was allegedly constructively terminated.  Thus, Smith's complaint alleges the VA took personnel action and failed to take corrective personnel action, both of which are prohibited by the CSRA.  Accordingly, Plaintiff could have challenged all of the alleged conduct through the CSRA, and his claims are barred. *See Saul,* 928 F.2d at 841.  This court does not have subject matter jurisdiction to decide Smith's claims, and his remedy, if any, lies within CSRA procedures.

Plaintiff also alleges in conclusory fashion that the VA caused him emotional distress, including "Loss of Enjoyment of Life, Depression, Mental Anguish, Humiliation, Pain and Suffering, Loss of Self-Esteem, and Loss of Sense of Self-Worth." Assuming without deciding the complaint alleged sufficient facts to support a negligent infliction of emotional distress claim, that claim is also preempted by the CSRA. In *Saul v. United States,* the Ninth Circuit held that a former federal employee's state law tort claims were preempted by the CSRA, where the claims stem from the working relationship, regardless of whether the claim involved a pay-related injury. 928 F.3d at 843. The court found that the CSRA and its legislative history showed that Congress did not intend that state tort law operate "within the interstices of the act." *Id.* at 842. The court concluded that Congress intended to oust state tort law from the realm of federal employment, and even where the CSRA provides no remedy, preemption of work-related state tort claims was necessary to fulfill congressional intent. *Id.* at 843. Accordingly, Smith's negligent infliction of emotional distress claim is also preempted by the CSRA, and the court does not have subject matter jurisdiction to decide it.

### III. **Conclusion.**

Smith's complaint attempts to assert FTCA claims based on state common law tort theories. All of Smith's claims are based on prohibited personnel actions that federal employees can challenge under the CSRA. The CSRA's administrative procedures are Smith's exclusive remedy for the prohibited personnel actions for which he seeks monetary damages and injunctive relief in the complaint. Because Smith's CSRA remedies are both exclusive and preemptive, the court lacks subject matter jurisdiction over Smith's state tort claims. Leave to amend the complaint will not be granted because Smith's claims cannot be cured by the allegation of additional facts. *See Lopez v. Smith,* 203 F.3d 1122, 1126, 1131 (9th Cir. 2000) (en banc) (citing *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995) (leave to amend should be granted unless amendment would be futile)). Any FTCA claim arising from Plaintiff's factual allegations will be preempted by the CSRA.

/ / /

/ / /

8

Based on the foregoing,

**IT IS ORDERED** that:

1. Plaintiff's request to proceed in forma pauperis is GRANTED. Plaintiff shall not be required to pay the filing fee of four hundred dollars ($400.00).

2. Plaintiff is permitted to maintain this action to conclusion without the necessity of prepayment of any additional fees or costs or the giving of a security therefor. This Order granting leave to proceed in forma pauperis shall not extend to the issuance of subpoenas at government expense.

3. The Clerk of Court shall file Plaintiff's complaint.

**IT IS RECOMMENDED** that Plaintiff's complaint be DISMISSED.

Dated this 15th day of July, 2014.

PEGGY A. LEEN
UNITED STATES MAGISTRATE JUDGE

### NOTICE

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court. Pursuant to Local Rule of Practice (LR) IB 3-2(a), any party wishing to object to the findings and recommendations of a magistrate judge shall file and serve *specific written objections* together with points and authorities in support of those objections, within fourteen days of the date of service of the findings and recommendations. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's Order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991). The points and authorities filed in support of the specific written objections are subject to the page limitations found in LR 7-4.

/ / /

/ / /